Exhibit 1

1 | Richard P. Traulsen – State Bar #016050
**BEGAM, MARKS & TRAULSEN P.A.**
2 | 11201 North Tatum Blvd., Suite 110
Phoenix, Arizona  85028-6037
3 | (602) 254-6071
rtraulsen@bmt-law.com
4

5 | Raymond P. Boucher CA Bar No. 115364
Brian M. Bush CA Bar No. 294713
(Admitted Pro Hac Vice)
6 | **BOUCHER LLP**
21600 Oxnard Street, Suite 600
7 | Woodland Hills, California 91367-4903
Tel:    (818) 340-5400
8 | Fax:    (818) 340-5401
*ray@boucher.la*
9 | *bush@boucher.la*

10 | Attorneys for Plaintiffs

11 | **SUPERIOR COURT OF THE STATE OF ARIZONA**

12 | **COUNTY OF MARICOPA**

**COPY**

APR **2 4** 2018

CHRIS DEROSE, CLERK
N. BUTZBACH
DEPUTY CLERK

13 | JESSICA BURCIAGA, an individual,
MARIANA DAVALOS, an individual,
14 | BRENDA GEIGER, an individual,
ABIGAIL RATCHFORD, an individual,
15 | ANA CHERI, an individual, ALANA
CAMPOS, an individual,
16 | JESSICA KILLINGS, an individual,
BROOKE TAYLOR JOHNSON, an
17 | individual, HILLARY HEPNER, an
individual, JACLYN SWEDBERG, an
18 | individual, CARMEN ELECTRA, an
individual, JORDAN CARVER, an
19 | individual,

20 | Plaintiffs,

21 | v.

22 | METROPOLITAN BUSH COMPANY,
LLC, d/b/a ESSEX GENTLEMEN'S
23 | CLUB, an Arizona Corporation; and
DOES 1 through 20, inclusive,
24

25 | Defendants.

NO. CV 2 0 1 8 - 0 5 2 1 9 2

**COMPLAINT**

1. **Misappropriation of Likeness**

2. **Violation of the Lanham Act, 15 U.S.C. § 1125(a)**

3. **False Light Invasion of Privacy**

26

27 | <u>**INTRODUCTION**</u>

28 | 1.    Plaintiffs are JESSICA BURCIAGA, MARIANA DAVALOS, BRENDA

GEIGER, ABIGAIL RATCHFORD, ANA CHERI, ALANA CAMPOS, JESSICA KILLINGS, BROOKE TAYLOR JOHNSON, HILLARY HEPNER, JACLYN SWEDBERG, CARMEN ELECTRA and JORDAN CARVER (collectively herein referred to as "Plaintiffs"). They are professional models, business women, and well-known social media personalities.

2.      Defendants are METROPOLITAN BUSH COMPANY, LLC, d/b/a ESSEX GENTLEMEN'S CLUB, an Arizona Corporation (hereinafter the "Defendant Club" or "ESSEX GENTLEMEN'S CLUB"), and DOES 1 through 20, inclusive, agents of Defendant Club and/or presently unnamed third parties who upon information and belief are responsible for the misappropriation of Plaintiffs' images and likenesses as alleged in this Complaint (collectively herein referred to as "Defendants").

3.      Defendants have pirated and altered the images, likeness and/or identity of each Plaintiff, and posted the same in advertisements or promotions and on Defendant Club's websites including its social media platforms, for purely self-serving commercial purposes.

4.      Having operated a business in the adult entertainment industry, Defendants were, or should have been, well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

5.      Despite being well aware of an obligation to do so, Defendants never negotiated for or purchased any image of any Plaintiff. On the contrary, Defendants circumvented the typical arms-length negotiation process entirely and pirated the images. In doing so, Defendants deprived each Plaintiff of the right to say "no," to protect her image, brand and reputation, and gained a windfall by using and altering the images of professional and successful models for Defendants' own commercial purposes without having to compensate the models a single penny for such usage.

6.      Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image to Defendants for the promotion of the Defendant Club, each Plaintiff would have promptly and enthusiastically declined to do so.

7.     Defendants' misappropriation of Plaintiffs' likenesses, furthermore, encouraged among the public and Defendants' business invitees and patrons the false perception that each Plaintiff endorses, supports, participates in or attends the types of events hosted at the Defendant Club.

8.     Defendants' conduct is misleading and deceptive. Defendants' conduct is injurious to each Plaintiff by falsely and fraudulently representing that each Plaintiff depicted in the misappropriated images is somehow affiliated with Defendants, has contracted to perform at and/or participate in events at the Defendant Club and/or has been hired to promote, advertise, market or endorse the Defendant Club, its business and services of being a partially nude Strip Club and other activities offered at the Club. They also create the false and fraudulent perception that each Plaintiff depicted in the advertisements will attend each event and participate in the activities advertised.

9.     By using the Plaintiffs' images without authority or consent as alleged in this Complaint, Defendants have jeopardized each Plaintiff's professional image, brand and marketability.

10.     Defendants' conduct has also deprived each Plaintiff the opportunity to engage in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.

## JURISDICTION AND VENUE

11.     This case arises under state law and jurisdiction is appropriate in the Superior Court for the State of Arizona pursuant to Article VI § 14 of the Arizona Constitution, and ARS § 12-123.

12.     Additionally, as a court of general jurisdiction pursuant to the Arizona Constitution this Court has concurrent jurisdiction over Plaintiffs' Lanham Act (15 U.S.C. § 1125(a)(1)(A)) claim because no law gives federal courts exclusive jurisdiction over this cause of action.

13.     Venue is proper in this Court pursuant to ARS § 12-401 because Defendant M

1  conducts business in Maricopa County.

2  **PARTIES**

3  **Plaintiffs:**

4      14.    Plaintiff JESSICA BURCIAGA ("BURCIAGA") is, and at all times relevant to

5  this action was, an American model, business woman, actress, and spokesperson. She was a

6  *Playboy* Playmate. She resides in Atlanta, Georgia. BURCIAGA's business ventures include a

7  women's online clothing boutique, (www.SailorandSaint.com), a successful hair accessory

8  company, Burciaga Blends (https://www.bellamihair.com/pages/jessica-burciaga) and a

9  popular kitsch brand (crushglow.com). As a model, BURCIAGA has appeared in magazines,

10  such as *Maxim, Playboy, Stuff, Import Tuner, Modified Magazine, Performance Auto &*

11  *Sound, Show Latina*, and *Lowrider*. She has appeared as a Ring Girl in EA Sport's "Sports

12  Fight Night Round 3" video game. As an actress, BURCIAGA has appeared as herself in

13  several episodes of "*The Girls Next Door*", a reality television series. BURCIAGA also has

14  more than 1.7 million Instagram followers, 200,000   Twitter subscribers, and 300,000

15  followers on Facebook.

16      15.    Plaintiff JACLYN SWEDBERG ("SWEDBERG") is, and at all times relevant

17  to this action was, an American model, actress, and business woman.  She was a *Playboy*

18  Playmate and Playmate of the Year. As an actress, SWEDBERG has appeared in a number of

19  TV shows, Reality shows and Series, including "*Badass!*", where she starred in five episodes,

20  "*Playboy's Beach House*", "*Pauly Shore's Paulytic's*", "*Snake & Mongoose*".  She has starred

21  in the horror film "*Muck*" and is starring in "*Muck: Chapter 1*", which is to be released in

22  2019. SWEDBERG has a combined social media following of more than 5 million followers.

23      16.    Plaintiff MARIANA DAVALOS ("DAVALOS") is, and at all times relevant to

24  this action was, a Columbian model and spokesperson. She is a resident of Aventura, Florida.

25  DAVALOS was the face of Nacar cosmetics and as a model, has appeared in *Maxim, Imagen,*

26  *Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans,*

27  *Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans*

28  and *Sator* magazines. On social media, DAVALOS has close to 500,000 followers on

4

1 | Instagram and more than 250,000 Facebook followers.

2       17.    Plaintiff BRENDA GEIGER ("GEIGER") is, and at all times relevant to this
3 action was, a professional model, actress, television personality, and spokesmodel. She resides
4 in Brewerton, New York. As a model, GEIGER has been featured in numerous magazines
5 such as *Show*, *Maxim*, *Glamour*, and *Raw*. She has been featured in product and brand
6 campaigns for Primitive Clothing. GEIGER has also appeared on the "Howard Stern Show" in
7 a 'Miss HTV' contest and in various music videos for artists, including Keri Hilson and Lil'
8 Wayne.

9       18.    Plaintiff ABIGAIL RATCHFORD ("RATCHFORD") is, and at all times
10 relevant to this action was, an American model, actress and spokesperson. As a model,
11 RATCHFORD has appeared in a number of magazines including, *Zoo, Maxim, Playboy* and
12 *Innocent*. She has been featured in numerous billboard campaigns on Sunset Blvd.
13 RATCHFORD has also appeared on various television programs, including multiple guest
14 roles on ABC, E! and most recently, NBC's "*Parks and Recreation*". She appears frequently
15 on the show *TMZ* where they have coined her "The Sweetheart". RATCHFORD has been
16 featured as a model for a number of designers including Michael Costello, walking in his
17 Stello Spring Collection show during this year's LA Fashion Week. RATCHFORD has close
18 to 7.5 million followers on Instagram and 4 million on Facebook.

19       19.    Plaintiff ANA CHERI ("CHERI") is, and at all times relevant to this action was,
20 an American model, spokesperson, businesswoman and a *Playboy* Playmate. As a model,
21 CHERI has focused on fitness and health. As such, she obtained several NPC Bikini titles and
22 appeared in *Muscle and Fitness* Magazine. CHERI also works for Shredz Supplements as a
23 Brand Ambassador and as a Motivational Speaker. CHERI has over 11.1 million followers on
24 Instagram, over 6 million followers on Facebook and 211,000 followers on Twitter.

25       20.    Plaintiff ALANA CAMPOS ("CAMPOS") is, and at all times relevant to this
26 action was, a Brazilian model, spokeswoman, actor and a *Playboy* Playmate. She is a resident
27 of Los Angeles, California. CAMPOS has also appeared in *Astonish, Viva Glam, Bliss* and *AZ*
28 *Foothills* magazines. She has been featured in numerous advertising campaigns for Arden B,

1  Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift
2  Eyewear, Sexy Dresses, Sachika, Marisa Kenson, and Sports Calendar. As an actress,
3  CAMPOS starred in the movie *Last Vegas* with Robert Deniro, Morgan Freeman and
4  Michael Douglas. CAMPOS is also a spokesmodel for My Body Journey. She was a Tecate
5  Beer ring girl at the Mayweather vs. Pacquiao fight. CAMPOS has close to 600,000 Instagram
6  followers and over 95,000 followers on Twitter.

7       21.    Plaintiff JESSICA KILLINGS ("KILLINGS") is, and at all times relevant to this
8  action was, an American model, actress and video star. She is a resident of Los Angeles,
9  California. KILLINGS has appeared in some of the major men's magazines including
10 *Playboy, Maxim, FHM, King, SHOW, Blackmen, Straight Stuntin, Smooth, Mixed, Hip Hop*
11 *Wired, Low Rider*; she has been on the cover of *Dimez*. KILLINGS has starred as lead talent in
12 music videos for Tyga, Jay Sean with Nicki Minaj, Bow Wow, Big Sean with Chris Brown,
13 Baby Bash with Slim Thug and Far East with Snoop Dogg. KILLINGS has more than 1.8
14 million followers on Instagram and 57,000 Twitter followers.

15      22.    Plaintiff BROOKE TAYLOR JOHNSON ("JOHNSON") is, and at all times relevant to
16 this action was, a professional model, television personality, and actress. She has been
17 featured in many catalogs, magazines, billboards, television commercials, and shows.
18 JOHNSON is known for her modeling work for *Playboy*, *FHM*, *Maxim*, *Stuff*, DreamGirls,
19 Frederick's of Hollywood, Coors Light, and Budweiser. Most recently, she appeared in the
20 new magazine, *Viva Glam*. JOHNSON has done campaigns for worldwide brands such as
21 Oliver Peoples, Bacardi Rum, Leg Avenue, Coca Cola, She has also been featured in the
22 Scottsdale Area campaign, *US Health and Fitness*, and *Playboy*.

23      23.    Plaintiff HILLARY HEPNER ("HEPNER") is, and at all times relevant to this action
24 was, an American model, spokeswoman, actress and resident of Charleston, South Carolina.
25 HEPNER has appeared in *Playboy, Playboy Intimates, 944 Vegas, American Curves, Vegas*
26 *Weekly, Hooters* and *Kandy* magazines. She has been in the Alpha Cuts Pro Fitness Ad, the
27 Lapdance Lingerie Catalog, and on the Twilight Park Ads/Billboard in Woodlake, CA. She
28 appears in the Rockstar Energy Drink Calendar, as Miss Sport Football, Spencer's Nationwide

1  Window Valentine Campaign, Cyber Girl Xtra, Miss Playboy Club, NEYROT Model of the
2  Month, Earth Cam Model, Miss Budweiser Bikini Bash, and the Hooters Calendar. HEPNER
3  appeared in the National Hooters Christmas Commercial and has starred in a Ciroc Vodka
4  Commercial with P. Diddy and in the Paul Oakenfold music video "Finally". HEPNER has
5  also been featured on SportsIllustrated.com and has been named as a Top 10 Supermodel.

6       24.     Plaintiff CARMEN ELECTRA ("ELECTRA") is, and at all times relevant to
7  this action, an American model, actress, business woman, TV personality, spokesperson and
8  celebrity. She was a *Playboy* Playmate. ELECTRA has appeared on countless magazine
9  covers, editorials and TV commercials. She has her own range of products including a
10 signature fragrance line and workout video. As an actress, ELECTRA starred on the TV show
11 "*Baywatch*", and she danced with the *Pussycat Dolls*. She has been featured in films such as,
12 "*Scary Movie*", "*Date Movie*", "*Meet the Spartans*" and "*Disaster Movie*". She has also
13 hosted MTV's Spring Break specials. On social media, ELECTRA has over 4 million
14 combined followers on Twitter, Facebook and Instagram.

15      25.     Plaintiff JORDAN CARVER ("CARVER") is, and at all times relevant to this
16 action was, a German glamour model, actress, reality star and spokeswoman. CARVER was a
17 commercial spokeswoman for online German consumer electronics giant, Redcoon and racing
18 sport seat production company, COBRA. She has appeared in numerous magazines, including
19 on the cover of *Zoo* magazine six times. As an actress, CARVER starred in "*Who Killed*
20 *Johnny*" and participated on the German reality show "*Wild Girls, 'Auf High Heels durch*
21 *Afrika' (Wild Girls - In High Heels Through Africa)*". CARVER has more than 7 million
22 social media followers across social media platforms, Facebook, Instagram and Twitter.

23 **Defendants:**

24      26.     Based on publicly available records, and further upon information and belief,
25 Defendant METROPOLITAN BUSH COMPANY, LLC, operating and doing business as
26 ESSEX GENTLEMEN'S CLUB is a limited liability corporation organized and existing under
27 the laws of the State of Arizona with its principal place of business located at 4139 W. Indian
28 School Road, Phoenix, Arizona 85019.

27.     At all relevant times mentioned herein the Defendant Club  held itself out and has held itself out to be a "Gentleman's Club" (i.e., a strip club) that engages in the business of entertaining its patrons with beverage sales and sales of dance and other performances by partially nude women at  the Club.

28.     Plaintiffs are unaware of the true names and capacities of Defendants named herein as unidentified DOES 1 through 20, inclusive (hereinafter referred to as "DOES"), and, therefore, sues such Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint when the true names of said Defendants are ascertained. Plaintiffs are informed and believe and on such information and belief allege that each of the Defendants named by such a fictitious names at all times mentioned in this complaint were, the agent(s), servant(s), or employer of each of the other Defendants and that, in doing the acts alleged herein, were acting within the course and scope of said agency, service, or employment, and with the permission and consent of each of the other Defendants, and are, in some manner, responsible for the acts and omissions as alleged herein and are, therefore, liable to Plaintiffs for the damages alleged herein.

## FACTUAL ALLEGATIONS AS TO ALL CAUSES OF ACTION

### Defendants Use Website and Social Media Platforms for Marketing:

29.     Upon information and belief, the Defendant Club coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website, among others, and various coordinated social media promotions through Facebook, Twitter, Instagram and Tumblr pages ("Social Media Accounts"), among others.

30.     Defendants' marketing and promotional activities are publicly accessible through the World Wide Web, various social media outlets and affirmative prospect marketing.

31.     Plaintiffs are informed and believe and on such information allege that Defendants further promote their business by and through the use of marketing strategies including, but not limited to, the following: social media (such as Instagram [with 3,532 followers], Facebook [with 14,701 friends], and Twitter [with 185 followers]); flyers,

commercials, and posters. At all times relevant to this Complaint Defendants had actual and exclusive control over the contents contained within and/or displayed on each of said marketing devices.

32.    Upon information and belief, Defendant manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/essex.arizona/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "Arizona's Most Modern and Luxurious Gentlemen's Club". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through their own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

33.    Upon information and belief, Defendant manages, operates and/or controls an "Instagram account" (accessible via the URL: https://www.instagram.com/essexazphx/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being the "Hottest Club in Phoenix" with the "Sexiest Ladies". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through their own personal acts of posting items on the Instagram Account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

34.    Upon information and belief, Defendant manages, operates and/or controls a "Twitter profile" (accessible via the URL: https://twitter.com/essexaz/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "Arizona's Premiere Gentlemen's Club" with a "Commitment To Tease And Please [and] Some Of The Best Customer Service In The Adult Nightclub Industry". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Twitter profile through their own personal acts of posting items on the Twitter profile, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter profile.

35.     Upon information and belief, Defendant manages, operates and/or controls a website (accessible via the URL: www.essexaz.com) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "Phoenix's Newest And Most Erotic Showgirl Experience....Our Girls Are Ready And Willing To Please...With And Excellent Choice Of Both Homegrown & National Beauties, You Are Sure To Be Pleased". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its website through their own personal acts of posting items on the website, or by expressly permitting and condoning another person(s)' act of posting items on the website.

36.     Defendants have used each Plaintiffs' images and likenesses in advertisements and marketing displays on Defendant's social media accounts to generate additional revenue, increase sales, and promote the patronage of the Defendant Club.

**Plaintiffs Are Professional Models and Their Images Are Commercially Valuable:**

37.     Each Plaintiff is a professional model who earns a living by promoting her image and likeness to select clients, companies, commercial brands, media, social media and entertainment outlets for the advertisement of products and services, as well as the promotion of their own reputation and brand for modeling, acting, hosting, and other opportunities.

38.     Each Plaintiff's career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

39.     Each Plaintiff commands substantial sums of money for the licensed commercial use of her image.

40.     A model's reputation directly impacts the commercial value associated with the use of ones' image, likeness, or identity to promote a product or service and as such, Arizona common law has recognized that the person has the right to control the commercial exploitation of her name, likeness and identity.

41.     Each Plaintiff is a professional model in the ordinary course. Each Plaintiff seeks to control the commercial use and dissemination of her image and, thus, actively

participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

42.     In the modeling industry, reputation is critical. Endorsing, promoting, advertising or marketing the "wrong" product, or working in a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

43.     As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of the Defendants, without Plaintiffs' consent for use in its online marketing scheme designed to promote the Defendant Club.

**The Misappropriated Images:**

44.     The Defendant Club unlawfully posted and/or displayed the Plaintiff's image and likeness 147 times, on either their website, Facebook page or Instagram account, in connection with advertising ESSEX GENTLEMEN'S CLUB.

45.     Defendants posted BURCIAGA's image and likeness on Defendant Club's Facebook page on or about 5/13/15, 5/28/15, 6/11/15, 8/13/15, 9/16/15, 9/30/15, 10/7/15, 10/28/15, 12/9/15, 12/16/15, 12/23/15, 12/7/16, 12/14/16, 12/21/16, 12/28/16, 1/4/17, 1/11/17, 1/18/17, 1/25/17, 2/1/17, 2/8/17 and 2/15/17. Defendants also posted BURCIAGA's image and likeness on Defendant Club's Instagram page on or about 7/30/15, 9/16/15, 10/7/15, 10/28/15, 12/9/15, 12/16/15 and 12/23/15.

    a.     Defendants' use was unauthorized and for a commercial purpose.

    b.     BURCIAGA is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.     Defendants never hired or contracted with BURCIAGA to advertise,

promote, market or endorse the Defendant Club.

d.   BURCIAGA has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.   Defendants never sought permission or authority to use or alter BURCIAGA's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.   BURCIAGA never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.   Defendants neither offered nor paid any remuneration to BURCIAGA for the unauthorized use or her image.

h.   Defendant's use and alteration of BURCIAGA's image creates the false perception that BURCIAGA has consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

46.   Defendants posted GEIGER's image and likeness on Defendant Club's Facebook page on or about 9/5/15, 9/6/15, 1/27/17, 2/20/17, 3/13/17, 4/3/17, 4/24/17, 5/15/17, 6/5/17, 6/26/17, 7/17/17, 8/7/17, 9/18/17, 10/9/17, 10/30/17 and 11/20/17. Defendants also posted GEIGER's image and likeness on Defendant Club's Instagram page on or about 8/29/15, 9/6/15 and 9/18/17.

a.   Defendants' use was unauthorized and for a commercial purpose.

b.   GEIGER is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.   Defendants never hired or contracted with GEIGER to advertise, promote, market or endorse the Defendant Club.

d.   GEIGER has never been employed by Defendants or contracted with

Defendants to participate in events at the Club.

e.    Defendants never sought permission or authority to use or alter GEIGER's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.    GEIGER never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.    Defendants neither offered nor paid any remuneration to GEIGER for the unauthorized use or her image.

h.    Defendant's use and alteration of GEIGER's image creates the false perception that GEIGER had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

47.    Defendants posted DAVALOS' image and likeness on Defendant Club's Facebook page on or about 9/10/15, 9/13/15, 9/14/15, 9/20/15, 9/28/15, 10/4/15, 10/5/15, 10/11/15, 12/12/15, 12/19/15, 12/26/15, 1/2/16, 1/9/16, 1/16/16, 1/23/16, 12/5/16, 12/6/16, 12/11/16, 12/13/16 and 12/21/16. Defendant also posted DAVALOS' image and likeness on Defendant Club's Instagram page on or about 9/13/15, 9/31/15, 10/4/15, 10/8/15, 10/11/15, 10/28/15 and 12/5/16.

a.    Defendants' use was unauthorized and for a commercial purpose.

b.    DAVALOS is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.    Defendants never hired or contracted with DAVALOS to advertise, promote, market or endorse the Defendant Club.

d.    DAVALOS has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter DAVALOS' image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    DAVALOS never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.    Defendants neither offered nor paid any remuneration to DAVALOS for the unauthorized use or her image.

    h.    Defendant's use and alteration of DAVALOS' image creates the false perception that DAVALOS had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

48.    Defendants posted CAMPOS' image and likeness twice on Defendant Club's Instagram page on or about 3/17/16.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    CAMPOS is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with CAMPOS to advertise, promote, market or endorse the Defendant Club.

    d.    CAMPOS has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter CAMPOS' image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    CAMPOS never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity

to advertise, promote, market or endorse the Defendant Club.

g.   Defendants neither offered nor paid any remuneration to CAMPOS for the unauthorized use or her image.

h.   Defendant's use and alteration of CAMPOS' image creates the false perception that CAMPOS had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

49.   Defendants posted SWEDBERG's image and likeness on Defendant Club's Facebook page on or about 4/3/16, 4/30/16, 5/14/16, 5/28/16, 6/11/16, 6/25/16, 7/9/16, 7/23/16, 8/6/16, 8/20/16, 8/28/16, 9/3/16, 9/11/16, 9/17/16, 9/18/16, 9/25/16, 10/1/16, 10/2/16, 10/14/16, 10/15/16 and 10/21/16.

a.   Defendants' use was unauthorized and for a commercial purpose.

b.   SWEDBERG is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.   Defendants never hired or contracted with SWEDBERG to advertise, promote, market or endorse the Defendant Club.

d.   SWEDBERG has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.   Defendants never sought permission or authority to use or alter SWEDBERG's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.   SWEDBERG never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.   Defendants neither offered nor paid any remuneration to SWEDBERG the unauthorized use or her image.

    h.    Defendant's use and alteration of SWEDBERG's image creates the false perception that SWEDBERG had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

50.    Defendants posted HEPNER's image and likeness on Defendant Club's Facebook page on or about 10/9/16, 10/16/16, 10/17/16, 10/23/16, 11/6/16, 11/14/16, 11/21/16, 11/28/16 and 12/5/16.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    HEPNER is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with HEPNER to advertise, promote, market or endorse the Defendant Club.

    d.    HEPNER has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter HEPNER's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    HEPNER never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.    Defendants neither offered nor paid any remuneration to HEPNER the unauthorized use or her image.

    h.    Defendant's use and alteration of HEPNER's image creates the false perception that HEPNER had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interest.

16

51. Defendants posted JOHNSON's image and likeness on Defendant Club's Facebook page on or about 10/26/16 and 10/30/16. Defendants also posted JOHNSON's image and likeness on Defendant Club's Instagram page on or about 10/26/16.

    a. Defendants' use was unauthorized and for a commercial purpose.

    b. JOHNSON is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c. Defendants never hired or contracted with JOHNSON to advertise, promote, market or endorse the Defendant Club.

    d. JOHNSON has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e. Defendants never sought permission or authority to use or alter JOHNSON's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f. JOHNSON never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g. Defendants neither offered nor paid any remuneration to JOHNSON the unauthorized use or her image.

    h. Defendant's use and alteration of JOHNSON's image creates the false perception that JOHNSON had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

52. Defendants posted CHERI's image and likeness on Defendant Club's Facebook page on or about 3/20/17, 3/27/17, 4/10/17, 4/24/17, 5/8/17, 5/22/17, 5/29/17, 6/11/17, 6/19/17, 6/25/17, 6/26/17, 7/9/17, 7/23/17 and 8/6/17. Defendants also posted CHERI's

17

image and likeness on Defendant Club's Instagram page on or about 6/19/17.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    CHERI is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with CHERI to advertise, promote, market or endorse the Defendant Club.

    d.    CHERI has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter CHERI's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    CHERI never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.    Defendants neither offered nor paid any remuneration to CHERI the unauthorized use or her image.

    h.    Defendant's use and alteration of CHERI's image creates the false perception that CHERI had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

53.    Defendants posted KILLINGS' image and likeness on Defendant Club's Facebook page on or about 2/6/17, 2/13/17, 2/27/17, 3/6/17, 3/13/17, 3/27/17, 4/17/17, 6/12/17 and 7/24/17. Defendants also posted KILLINGS' image and likeness on Defendant Club's Instagram page on or about 7/10/17, 7/24/17, 8/28/17 and 9/4/17.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    KILLINGS is readily identifiable in the misappropriated image. No

reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with KILLINGS to advertise, promote, market or endorse the Defendant Club.

    d.    KILLINGS has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter KILLINGS' image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    KILLINGS never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.    Defendants neither offered nor paid any remuneration to KILLINGS the unauthorized use or her image.

    h.    Defendant's use and alteration of KILLINGS' image creates the false perception that KILLINGS had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

54.    Defendants posted CARVER's image and likeness on Defendant Club's Facebook page on or about 3/21/16 and 5/3/16.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    CARVER is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with CARVER to advertise, promote, market or endorse the Defendant Club.

d.   CARVER has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.   Defendants never sought permission or authority to use or alter CARVER's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.   CARVER never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.   Defendants neither offered nor paid any remuneration to CARVER the unauthorized use or her image.

h.   Defendant's use and alteration of CARVER's image creates the false perception that CARVER had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

55.   Defendants posted RATCHFORD's image and likeness on Defendant Club's Instagram page on or about 8/21/17.

a.   Defendants' use was unauthorized and for a commercial purpose.

b.   RATCHFORD is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.   Defendants never hired or contracted with RATCHFORD to advertise, promote, market or endorse the Defendant Club.

d.   RATCHFORD has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.   Defendants never sought permission or authority to use or alter RATCHFORD's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.     RATCHFORD never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.     Defendants neither offered nor paid any remuneration to RATCHFORD the unauthorized use or her image.

h.     Defendant's use and alteration of RATCHFORD's image creates the false perception that RATCHFORD had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

56.     Defendants posted ELECTRA's image and likeness on Defendant Club's Facebook page on or about 1/8/18.

a.     Defendants' use was unauthorized and for a commercial purpose.

b.     ELECTRA is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.     Defendants never hired or contracted with ELECTRA to advertise, promote, market or endorse the Defendant Club.

d.     ELECTRA has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.     Defendants never sought permission or authority to use or alter ELECTRA's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.     ELECTRA never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.     Defendants neither offered nor paid any remuneration to ELECTRA the unauthorized use or her image.

h.    Defendant's use and alteration of ELECTRA's image creates the false perception that ELECTRA had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

## COUNT I

**Violation of Common Law Right of Publicity: Misappropriation of Likeness**

(*Plaintiffs SWEDBERG, CARVER, HEPNER, JOHNSON, DAVALOS, BURCIAGA, GEIGER, KILLINGS, CHERI, RATCHFORD and ELECTRA vs. All Defendants*)

57.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

58.    Arizona recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the public dissemination of their name and likeness for commercial use.

59.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of the Plaintiffs without their express consent to such use.

60.    Nevertheless, in violation of Arizona law, Defendants published, printed, displayed and/or publicly used the Plaintiffs' images, likenesses and identity on their website and social media outlets, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Defendant Club, and its events and activities.

61.    Each of the Plaintiff's faces and/or body are shown in each advertisement, and are clearly lighted and readily identifiable and distinguishable.

62.    Plaintiffs never consented to Defendants' use of their images, likenesses or identities for any purpose.

63.    Defendants misappropriated Plaintiffs' images in clandestine fashion without their knowledge and without even attempting to acquire Plaintiffs' permission.

64.    The Defendants acted intentionally by selecting Plaintiffs' images and, knowing

they did not have permission to use the images for commercial gain, by posting the images to Defendants' social media platforms and/or website in an effort to market the Defendant Club and its activities and events; in the alternative, and at a minimum, the Defendant Club acted with reckless indifference to Plaintiffs' legal rights by expressly permitting, allowing and condoning Doe Defendants 1-20 to post Plaintiffs' images on its website and/or social media platforms for the purpose of marketing and advertising the Club.

65.     Defendants are in the adult entertainment business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

66.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

67.     Defendants have caused and will continue to cause irreparable harm to the Plaintiffs, their reputations and brands by attributing to Plaintiffs their involvement with Strip Clubs, nude entertainment, and Plaintiffs' association in such activities.

68.     Defendants also have damaged the Plaintiffs as a direct and proximate result of their unauthorized use of their images, likenesses and/or identity without compensating the Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their likenesses in an amount to be established by proof at trial.

69.     As a further direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

## COUNT II

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)

*(All Plaintiffs vs. All Defendants)*

70.     Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

71.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

72.     Defendants used Plaintiffs' images, likenesses and/or identities as described herein without authority in order to create the perception that the Plaintiffs' worked at or was otherwise affiliated with the Defendant Club, endorsed the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of their images in order to advertise, promote, and market the Defendant Club and Defendants' business activities.

73.     Defendants' use and alteration of the Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

74.     Defendants' unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that the Plaintiffs worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of their images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that the Plaintiffs would participate in or appear at the specific events promoted in the advertisement.

75.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed

1  Defendants' business, the Club or the Club's events or activities, or would appear in person at
2  the Defendant Club's events and activities.

3        76.      Upon information and belief, Defendants' false advertising described above did,
4  in fact, deceive and/or cause consumer confusion as to whether the Plaintiffs worked at or
5  were otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's
6  events and activities, or consented to or authorized Defendants' or the Club's usage of her
7  images in order to promote Defendants' business or the Club's events and activities.

8        77.      Among other things, upon information and belief, such unauthorized use or
9  alteration misled and served to entice consumers and prospective consumers to visit the Club
10 and participate in events at the Club and had a material effect and impact on the decision of
11 patrons and prospective patrons to visit Defendants' business establishment.

12       78.      Defendants' advertisements, promotions and marketing of the Club and events at
13 the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote
14 their business and events through interstate promotions and campaigns to target persons from
15 several different states across the United States. Defendants principally use the World Wide
16 Web, social media and other vehicles of interstate commerce to advertise, market, promote,
17 and entice or lure traffic and patronage to their establishment.

18       79.      Defendants' unauthorized use of the Plaintiffs' images, likenesses and/or
19 identities as described herein was designed to benefit Defendants' business interests by,
20 among other things, promoting the Club and its activities and attracting clientele to the Club.

21       80.      Defendants knew or should have known that their unauthorized use of the
22 Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described
23 in this Complaint.

24       81.      Defendants' unauthorized use and alteration of the Plaintiff's images, likenesses
25 and/or identities, as described herein violates 15 U.S.C. § 1125(a) and was wrongful.

26       82.      Defendants' wrongful conduct as described herein was willful.

27       83.      Defendants had actual or constructive knowledge of the wrongfulness of their
28 conduct, acted with intent to deprive the Plaintiffs of their property interest, and further acted

1   with actual or constructive knowledge of the high probability that injury or damage would

2   result to the Plaintiffs.

3        84.    The method and manner in which Defendants used the images of the Plaintiffs

4   further evinces that Defendants were aware of and/or consciously disregarded the fact that the

5   Plaintiffs did not consent to Defendants' use of the images to advertise Defendants' business.

6        85.    Defendants have caused and will continue to cause irreparable harm to the

7   Plaintiff's, their reputations and brand by attributing to the Plaintiff's their involvement with

8   Strip Clubs, nude entertainment, and Plaintiff's association in such activities.

9        86.    Defendants also have damaged the Plaintiffs as a direct and proximate result of

10  their unauthorized use of their images, likenesses and/or identity without compensating the

11  Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market

12  value of each misappropriated use of their likenesses in an amount to be established by proof

13  at trial.

14       87.    As a further direct and proximate result of Defendants' conduct as alleged

15  herein, Defendants have earned and withheld profits attributable directly or indirectly to the

16  unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains

17  in an amount to be established by proof at trial.

18       88.    Defendants' conduct was purposeful and malicious in that Defendants

19  knowingly violated Plaintiffs' rights solely to benefit their business, increase profits, and

20  avoid paying money to legally acquire the right to commercial use of the Plaintiffs' images,

21  and consequently, exceptional relief is warranted pursuant to 15 U.S.C. §§ 1116, and 1117(a),

22  entitling Plaintiffs to treble damages and reasonable attorneys' fees.

## COUNT III

### False Light Invasion of Privacy

***(Plaintiffs SWEDBERG, CARVER, HEPNER, JOHNSON, DAVALOS, BURCIAGA,***

***GEIGER, KILLINGS, CHERI, RATCHFORD and ELECTRA vs. All Defendants)***

27       89.    Plaintiffs hereby incorporate by reference each and every allegation set forth in

28  the foregoing paragraphs as if fully alleged herein.

90.     Defendants' posting of Plaintiffs' images on its website and/or social media platforms, as alleged, created the false and misleading impression that Plaintiffs approved of and participated in some manner in the Defendant Club's business activities, i.e., selling access to partially nude female dancers and entertainers.

91.     This impression is both misleading and false.

92.     The misappropriated images were published by Defendants on the World Wide Web and/or publicly accessible and viewable social media platforms, and thus, constituted public statements.

93.     The impression created about the Plaintiffs would be highly offensive to a reasonable person.

94.     Defendants knew their unauthorized usages of the Plaintiff's images, likenesses and/or identity was misleading. Defendants knew that Plaintiffs never worked at the Defendant Club, promoted the Defendant Club, or authorized the Defendant Club to use their likenesses to advance Defendants' business interests. Defendants nevertheless posted and/or authorized the posting of the images of Plaintiffs with impunity.

95.     Defendants' conduct was willful, driven by the impulse to save thousands of dollars on hiring its own models and photographers and acquiring the appropriate licensing to use those models' images in their advertisements and promotions.

96.     Defendants acted with reckless indifference about whether the posting of Plaintiffs' images, as alleged, would create a false and misleading impression about the Plaintiffs.

97.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered harm to their professional reputation as well as general damages including mental and emotional damages.

98.     Defendants acted with malice; their conduct was purely profit driven and in reckless and callous disregard to placing Plaintiffs in a false light and giving the impression that Plaintiffs were involved in, agreed with, and condoned the activity of stripping for or providing adult entertainment to Defendants' business invitees. Accordingly, Defendants'

conduct warrants the imposition of punitive damages to the fullest extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, and awards as follows:

1. As to Count I, actual damages and disgorgement of profits attributable to Defendants' misappropriation of the Plaintiff's likeness;

2. As to Count II, actual damages and disgorgement of profits attributable to Defendants' misappropriation of the Plaintiff's likeness, as well as treble damages and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1116, and 1117(a);

3. As to Count III, appropriate compensatory damages for the Plaintiff's emotional and mental suffering and harm to professional reputation;

4. As to Count III, an award of appropriate punitive damages;

5. As to Counts I and II, prejudgment interest on the sum at the appropriate legal rate;

6. For costs of suit; and

7. For such other and further relief as the Court deems just.

## JURY DEMAND

WHEREFORE, each Plaintiff individually and collectively demands a jury trial on all causes and all issues so triable.

DATED this 23rd day of April, 2018.

**BEGAM MARKS & TRAULSEN, P.A.**

By_____
    Richard P. Traulsen
    11201 North Tatum Blvd.
    Suite 110
    Phoenix, Arizona  85028

1

2     **BOUCHER LLP**

3     Raymond P. Boucher
      Brian M. Bush
4     21600 Oxnard Street, Suite 600
      Woodland Hills, California 91367-4903

5     Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 2

1   Richard P. Traulsen – State Bar #016050
    **BEGAM, MARKS & TRAULSEN P.A.**
2   11201 North Tatum Blvd., Suite 110
    Phoenix, Arizona  85028-6037
3   (602) 254-6071
    rtraulsen@bmt-law.com
4
    Raymond P. Boucher CA Bar No. 115364
5   Brian M. Bush CA Bar No. 294713
    (Admitted Pro Hac Vice)
6   **BOUCHER LLP**
    21600 Oxnard Street, Suite 600
7   Woodland Hills, California 91367-4903
    Tel:    (818) 340-5400
8   Fax:    (818) 340-5401
    ray@boucher.la
9   bush@boucher.la

10   Attorneys for Plaintiffs

11                **SUPERIOR COURT OF THE STATE OF ARIZONA**

12                          **COUNTY OF MARICOPA**

13   JESSICA BURCIAGA, an individual,         NO. CV 2018-052192
     MARIANA DAVALOS, an individual,
14   BRENDA GEIGER, an individual,
     ABIGAIL RATCHFORD, an individual,        **SUMMONS**
15   ANA CHERI, an individual, ALANA
     CAMPOS, an individual,
16   JESSICA KILLINGS, an individual,         If you would like legal advice from a lawyer,
     BROOKE TAYLOR JOHNSON, an                contact the Lawyer Referral Service at
17   individual, HILLARY HEPNER, an                          602-257-4434
     individual, JACLYN SWEDBERG, an                              or
18   individual, CARMEN ELECTRA, an                     www.maricopalawyers.org
     individual, JORDAN CARVER, an                        Sponsored by the
19   individual,                               Maricopa County Bar Association

20                Plaintiffs,

21   v.

22   METROPOLITAN BUSH COMPANY,
     LLC, d/b/a ESSEX GENTLEMEN'S
23   CLUB, an Arizona Corporation; and
     DOES 1 through 20, inclusive,
24
                  Defendants.
25

26   THE STATE OF ARIZONA TO DEFENDANT:  METROPOLITAN BUSH COMPANY,
27                                        LLC, d/b/a ESSEX  GENTLEMEN'S
                                          CLUB
28

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona - whether by direct service, by registered or certified mail, or by publication - you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after the date of such service upon the Director. Service by registered or certified mail within the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. RCP 4; ARS Sections 20-222, 28-502, 28-503.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiffs' attorney. RCP 10(D); ARS Section 12-311; RCP 5.

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least 3 judicial days in advance of a scheduled proceeding. Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least 10 judicial days in advance of a scheduled court proceeding.

The name and address of Plaintiffs attorney is:

Richard P. Traulsen
**BEGAM, MARKS & TRAULEN, P. A.**
11201 North Tatum Blvd. Suite 110
Phoenix, Arizona  85028-6037

Raymond P. Boucher
Brian M. Bush
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

SIGNED AND SEALED this date:  _____

CLERK

APR 2 4 2018

By_____   CHRIS DEROSE, CLERK
Deputy Clerk                              N BUTERA ?A

2

Exhibit 3

1 | Richard P. Traulsen – State Bar #016050
**BEGAM, MARKS & TRAULSEN P.A.**
2 | 11201 North Tatum Blvd., Suite 110
Phoenix, Arizona  85028-6037
3 | (602) 254-6071
rtraulsen@bmt-law.com
4 |
Raymond P. Boucher CA Bar No. 115364
5 | Brian M. Bush CA Bar No. 294713
(Admitted Pro Hac Vice)
6 | **BOUCHER LLP**
21600 Oxnard Street, Suite 600
7 | Woodland Hills, California 91367-4903
Tel:    (818) 340-5400
8 | Fax:    (818) 340-5401
*ray@boucher.la*
9 | *bush@boucher.la*

10 | Attorneys for Plaintiffs



COPY

APR 2 4 2018

CHRIS DEROSE, CLERK
N. BUTZBACH
DEPUTY CLERK

11 | **SUPERIOR COURT OF THE STATE OF ARIZONA**

12 | **COUNTY OF MARICOPA**

13 | JESSICA BURCIAGA, an individual,
MARIANA DAVALOS, an individual,
14 | BRENDA GEIGER, an individual,
ABIGAIL RATCHFORD, an individual,
15 | ANA CHERI, an individual, ALANA
CAMPOS, an individual,
16 | JESSICA KILLINGS, an individual,
BROOKE TAYLOR JOHNSON, an
17 | individual, HILLARY HEPNER, an
individual, JACLYN SWEDBERG, an
18 | individual, CARMEN ELECTRA, an
individual, JORDAN CARVER, an
19 | individual,

20 |                        Plaintiffs,

21 | v.

22 | METROPOLITAN BUSH COMPANY,
LLC, d/b/a ESSEX GENTLEMEN'S
23 | CLUB, an Arizona Corporation; and
DOES 1 through 20, inclusive,
24 |
                        Defendants.
25 |

NO.  CV2018-052192

**PLAINTIFFS' CERTIFICATE RE:
COMPULSORY ARBITRATION**

26 |
27 |          The undersigned certifies that he knows the dollar limits and any other limitations set
28 | forth by the local rules of practice for the applicable superior court, and further certifies that

1   this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the

2   Arizona Rules of Civil Procedure.

3           DATED this 23rd day of April, 2018.

4                   **BEGAM MARKS & TRAULSEN, P.A.**

6                   By_____

7                     Richard P. Traulsen
                  11201 North Tatum Blvd.

8                     Suite 110
                  Phoenix, Arizona  85028

10                  **BOUCHER LLP**

12                  Raymond P. Boucher
                Brian M. Bush
                21600 Oxnard Street, Suite 600

13                  Woodland Hills, California 91367-4903

14                  Attorneys for Plaintiffs

Exhibit 4

David W. Dow (SBA #007377)
Jennifer L. Levine (SBA #033071)
**DOW LAW OFFICE**
3104 E. Camelback #281
Phoenix, Arizona 85016
Office: 480-776-5039
Fax: 480-945-0553
ddowlaw1@gmail.com
jlevine@ddowlaw.com
*Attorney for the Defendant Metropolitan Bush Company LLC.*

SUPERIOR COURT OF THE STATE OF ARIZONA

COUNTY OF MARICOPA

| | |
|---|---|
| JESSICA BURCIAGA, an individual; MARIANA DAVALOS, an individual; BRENDA GEIGER, an individual; ABIGAIL RATCHFORD, an individual; ANA CHERI, an individual; ALANA CAMPOS, an individual; JESSICA KILLINGS, an individual; BROOKE TAYLOR JOHNSON, an individual; HILLARY HEPNER, an individual; JACLYN SWEDBERG, an individual; CARMEN ELECTRA, an individual; JORDAN CARVER, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN BUSH COMPANY LLC, d/b/a ESSEX GENTEMEN'S CLUB, an Arizona Corporation; and DOES 1-20, inclusive.<br><br>Defendants. | Case No.: CV2018-052192<br><br>**NOTICE OF FILING NOTICE OF REMOVAL** |

Pursuant to U.S.C. §§1331, 1441, and 1446, Defendant METROPOLITAN

BUSH COMPANY, LLC, d/b/a ESSEX GENTLEMEN'S CLUB, by and through

NOTICE OF FILING NOTICE OF REMOVAL - 1

undersigned counsel, hereby gives Notice to the Clerk of the Maricopa County

Superior Court and to Plaintiffs that Defendant is removing this action to the

United States District Court for the District of Arizona.  The Complaint asserts a

claim arising under federal law and there is complete diversity of citizenship

between all Plaintiffs and the Defendant, and the amount in controversy exceeds

$75,000.   A copy of the Notice of Removal is attached hereto as Exhibit 1.

Respectfully submitted this 24th day of May, 2018.

By: /s/ David W. Dow
David W. Dow

**CERTIFICATE OF SERVICE**

Original Efiled this 24th day of May, 2018.

Clerk of the Maricopa County Superior Court
Turbocourt Efiling system.

Copies Eserved this 24th day of May, 2018 to:

Richard P. Traulsen
11201 North Tatum Blvd Suite 110
Phoenix, Arizona 85028
Attorneys for the Plaintiff

Raymond P. Boucher and Brian M. Bush
21600 Oxnard St. Suite 600
Woodland Hills, CA 91367
Attorneys for Plaintiff * pro hac vice in Arizona

By: /s/ David W. Dow